```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2
     ------------------------------------x
 3   UNITED STATES OF AMERICA,

 4
                              Case No. 14-cr-476-CS
 5      -vs-
                              SENTENCING
 6   JAMES JOHNSON,

 7                       Defendant.

 8   ------------------------------------x

 9                              United States Courthouse
                               White Plains, New York
10
                               June 24, 2022
11                             2:35 p.m.

12   B e f o r e :

13                       HONORABLE CATHY SEIBEL

14                       United States District Judge

15
     A P P E A R A N C E S :
16
     DAMIAN WILLIAMS
17      United States Attorney for the
        Southern District of New York
18   JOSIAH PERTZ
     RYAN ALLISON
19      Assistant United States Attorneys

20   THE LAW OFFICE OF MATTHEW GALLUZZO, PLLC
     MATTHEW GALLUZZO
21      Attorney for Defendant

22

23

24

25
```

 1          THE DEPUTY CLERK:  The Honorable Cathy Seibel.  United

 2 States v. Johnson.

 3          THE COURT:  Good afternoon, Mr. Allison, Mr. Pertz,

 4 Mr. Galluzzo, Mr. Johnson.  Everyone can have a seat.

 5          Let me start by putting on the record what I have

 6 received in connection with the resentencing.  I have everything

 7 from the first time.  Plus, I have the supplemental presentence

 8 report and Mr. Galluzzo's sentencing memorandum with attachments

 9 filed June 1.

10          Is that everything that I should have?

11          MR. ALLISON:  Yes, Your Honor.

12          THE COURT:  All right.  Mr. Johnson, have you read the

13 supplemental presentence report?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Have you gone over it with your lawyer?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Are you satisfied with Mr. Galluzzo and

18 his representation of you?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Mr. Galluzzo, you have gone over the

21 presentence report -- you have read the presentence report and

22 gone over it with your client?

23          MR. GALLUZZO:  Yes, I have, Your Honor.

24          THE COURT:  Do you have objections to anything in the

25 supplemental presentence report or the original one, for that

 1  matter?

 2          MR. GALLUZZO:  No, Your Honor.

 3          THE COURT:  All right.  Then the findings of fact in

 4  the presentence reports are my findings of fact.

 5          Does the government wish to be heard?

 6          MR. ALLISON:  Yes, Your Honor, briefly.

 7          Your Honor, I won't belabor the point because I

 8  understand that Your Honor has done several of these

 9  resentencings, is familiar with this case, but although it's now

10  an above-guidelines sentence, the government submits that 194

11  months is still an appropriate sentence.  I will just briefly

12  explain why.

13          The nature and the circumstances of the offense have

14  not changed.  The defendant participated in a violent gang,

15  including by shooting and paralyzing a victim.  As Your Honor

16  recognized at the original sentencing, the fact that the victim

17  did not die was luck.  In fact, after that shooting, the

18  defendant continued to participate in the gang and did so for

19  several years.

20          As for deterrence, Your Honor recognized this at the

21  original sentencing.  Your Honor recognized the importance of

22  protecting the public, particularly given the defendant's prior

23  history of violence.

24          And then to -- it's important, Your Honor, to avoid

25  unwarranted departures in sentencings -- excuse me --

1  unwarranted disparities in sentencing.  Your Honor has already

2  done, as I noted, several of these resentencings, and many of

3  the defendants have already received similar sentences to their

4  previous sentence.  For example, Chris Grebinger was previously

5  sentenced to 138 months, and in February of 2020, Your Honor

6  sentenced him to 132 months.  The same is true for Ronnie King,

7  for Gerald Martin, Wilbur Randolph, they all received

8  substantially similar sentences in their resentencings.

9          So for that reason, Your Honor, we think 194 months --

10  excuse me -- is appropriate.

11          THE COURT:  Thank you, Mr. Allison.

12          Mr. Galluzzo?

13          MR. GALLUZZO:  Thank you, Your Honor.

14          First, just before I begin, I do want to point out for

15  the record that my client today has a number of family members

16  in the audience, including his grandmother, on whose behalf I

17  submitted an application to have her speak.  I do have a letter

18  from her that I would like to read into the record if the Court

19  would indulge me.

20          THE COURT:  That's fine.  I have read the letter she

21  submitted, but if there is more, I am happy to hear it.

22          MR. GALLUZZO:  She wrote another letter, Your Honor,

23  so I have another one I would like to read for the record.

24          THE COURT:  That's fine.

25          MR. GALLUZZO:  And then also his son is in the

1   audience as well.  I want to put that on the record.

2           Your Honor, yes, this is, in fact, the second time

3   that you have sentenced my client, but I would submit to the

4   Court that my client is a very different person than the person

5   that was sentenced the first time, and that is the principal

6   reason why the Court should consider changing his sentence from

7   what it was previously in the case.

8           Your Honor, my client, when he was first arrested and

9   sentenced in this matter, was young, and he would say stupid;

10  perhaps an abuser of alcohol and drugs, and since that time, he

11  has completed an impressive amount of educational programming

12  while incarcerated.  The certificates are attached to my

13  submission.  They are numerous.  He has gotten completely sober.

14  He has had no issues with drugs or alcohol while incarcerated,

15  as certainly some inmates do.  My client's disciplinary record

16  has been spotless since 2016, and that was fairly minor.  So,

17  Your Honor, more importantly, beyond all of those things, it is

18  the things that he says about himself and about his future that

19  I think are the most compelling proof of how far he's come since

20  he was sentenced previously.

21          Your Honor, in my interactions with him I have found

22  him to be a person full of remorse, a person who is mature,

23  insightful and thoughtful.  He has a real plan for himself.  He

24  has completed some courses in commercial driver's license, and

25  he wants to be a truck driver when he gets out.  He also wants

1  to take care of his grandmother, who is suffering from serious

2  health issues of late.

3         And, Your Honor, it just seems that he has a very

4  positive attitude.  It seems to me that upon his release,

5  whether it's on supervised release or whatever, he is going to

6  do well, and he is going to try to play by the rules and try to

7  provide for his young family, and he is going to try to avoid

8  ever coming back to this place where he's been before.

9         And, Your Honor, my client is going to speak on his

10  own behalf, and you can evaluate that for yourself, what you

11  think of his character and what you want to make of his journey

12  these last several years.  That journey for him in terms of

13  getting to know himself better and learning how to untangle some

14  of the bad ideas and bad processes in his mind and learn how to

15  approach a problem constructively with the right frame of mind.

16         And I think that by itself distinguishes him from a

17  lot of his co-defendants, and I think his post offense

18  rehabilitation is more extensive and more genuine than some of

19  the others, like all of the others.  And I think it justifies

20  under the 3553(a) factors a different sentence.  It's true the

21  crime is the same, but he is not.  And as you are sentencing him

22  again here today, I think the result should be different if for

23  no other reason than that.

24         Now, with respect to his family, Ms. McKeithan had

25  asked me to read a letter.  If it's okay, I will read it now

 1  because this is relevant.  His family has seen this newfound

 2  maturity in James that's been developing over time while he's

 3  been incarcerated, and that's been reflected in some of the

 4  letters, and to kind of segue here, this letter from Ms.

 5  McKeithan.  She says, "The Most Honorable Judge, Your Honor, my

 6  name is Christine McKeithan."  Which is M-C-K-E-I-T-H-A-N.

 7  "Maternal grandmother of James Johnson.  I would like the Court

 8  to know how I believe James has grown mentally during the period

 9  of his incarceration.  I have not been able to see my grandson,

10  as our visits have been relegated to phone calls.  When given

11  these opportunities, we revisit the mistakes that he's made and

12  the maturity I believe he now has.

13          "In the course of the last six years, I have been

14  diagnosed with endstage renal failure, along with Stage 1 breast

15  cancer, and I do believe that James would be a great help to me

16  in my infirmities by being a chauffeur, by doing daily work

17  around the house, and carrying out his role in his family.

18          "Your Honor, I am asking would you be merciful to my

19  grandson, as I don't believe that I have a very long time left

20  to be here.  I gracefully fall upon the mercy of God and the

21  Court.  Sincerely, Christine McKeithan."

22          Your Honor, my client, obviously, if he were to be

23  released, he would go back home.  One of the things that he

24  would be involved in doing is taking care this person who is

25  obviously in very poor health.  I wanted to put that on the

1  record as well.

2           Another consideration for the Court, Your Honor, is

3  the pandemic has clearly impacted everyone who is incarcerated

4  in the Bureau of Prisons.  I think if we went back to the time

5  that Mr. Johnson was being sentenced originally, if we had known

6  that the conditions of the Bureau of Prisons were going to be so

7  bad, it was going to be so difficult to be incarcerated during

8  the pandemic, I think our sentences that we were imposing back

9  then would have been shorter because during the pandemic,

10 inmates have suffered more than the rest of the general public.

11 We all suffered in the pandemic.  We all continue to.  But it

12 was worse for inmates.  Inmates were oftentimes confined to

13 their cells for 23 hours a day with a half hour to either shower

14 or call someone on the phone, check their emails.  They were not

15 quarantined with their family members like most of us were.

16 They did not get to see their direct family members.  They were

17 separated from them, and they were not able to access the kind

18 of educational programming that they otherwise would have been.

19 Most of us quarantined were on the Internet or watching TV or

20 reading.  They didn't have those kinds of access to those

21 things.  They were locked in their cells frequently for all but

22 an hour, half hour a day for long stretches of time, apart from

23 their families.  Indeed, much more brutal for them than the rest

24 of us.  And I think a lot of judges for that reason were giving

25 people who have been incarcerated either at MDC or MCC, for

1  example, shorter sentences than they would have otherwise

2  received in light of the hardships they faced while in the

3  Bureau of Prisons.

4         I submit to the Court that the Court can consider that

5  on resentencing, perhaps give him some credit for having endured

6  those conditions at those various facilities.

7         Now lastly, there is the question of the guidelines of

8  what would be appropriate.  Obviously, the previous sentence of

9  110 months was a guidelines sentence that was imposed.  It was

10  the bottom of the range of the guidelines on that particular

11  count.  On top of that there was the seven-year consecutive

12  mandatory sentence as well of 84 months, combining to make a

13  194-month aggregate sentence, which was essentially a guidelines

14  sentence at that time.

15         Given that we are now resentenced with a different

16  guidelines scheme in place, what the government is essentially

17  asking you to do is to find an upward variance; to say that the

18  guidelines sentence that applies now is no longer appropriate,

19  and I explained to you, however, why this is not a case that

20  would fall within the heartland of the guidelines.

21         There is no basis for a variance except to say that

22  previously the appropriate guidelines sentence was 194 months.

23  Looking at the guidelines now, the guidelines as they apply

24  would properly account for all of the factors of his crime.

25         THE COURT:  What do you think I should make of the

1  reality that we all know, which is, this was a plea bargain --

2          MR. GALLUZZO:  Sure.

3          THE COURT:  -- and if the government had known *Davis*

4  was coming, they would not have offered just the racketeering;

5  they would have structured it differently.  They would have

6  either pegged the 924(c) to a gun crime or would have otherwise

7  essentially made up the difference, so that in some sense it

8  would be a windfall to Mr. Johnson to get a guidelines sentence

9  now because he never would have been offered just the

10 racketeering count as a practical matter back at the time.

11         MR. GALLUZZO:  Well, it's a legitimate question to

12 ask, and it's a legitimate argument.  I would just say that it's

13 unfortunately speculative because I guess we will never know.

14 We are not in this position to really be able to answer that

15 question.  What would we have done if the world had been

16 different back then?  We don't know.  Sometimes maybe perhaps

17 proving that these other charges that they would have tried to

18 have him plead guilty to would have been more difficult for

19 being a conspiracy or maybe they would not have insisted with

20 the same persistence on one of these other charges if the

21 conspiracy charge had not been available to them, this

22 previously committed Hobbs Act charge had not been available to

23 them as a plea bargaining alternative.

24         So ultimately, Your Honor, I don't think we should be

25 rewriting history and wondering what would have happened and

1  what should have happened.  We are here now sentencing him in

2  accordance with the guidelines, hopefully, and based on what he

3  stands convicted of.  So whether or not that's a windfall or

4  whether or not that's just a change in the framework that we are

5  now being forced to apply to the situation, I would submit that

6  Your Honor should find that there is no basis for a variance,

7  and that these are the guidelines that we are looking at today.

8          So, Your Honor, I think that's everything I have to

9  say on the matter, and I ask you to consider a guidelines

10 sentence as the guidelines stand today.  I know my client would

11 also like to speak on his own behalf.

12         THE COURT:  Of course.

13         MR. GALLUZZO:  Thank you.

14         THE COURT:  Mr. Johnson, you have a right to be heard.

15 I am interested in anything you have to say.  It's okay with me

16 if you want to stay seated.  Just talk into the microphone.

17         THE DEFENDANT:  Okay.

18         THE COURT:  And if you are going to read, which is

19 also fine, just take your time and go slow because we all tend

20 not to realize how quickly we are going when we are reading.

21         THE DEFENDANT:  Okay.  I would like to start off by

22 saying before this Court that I am deeply sorry for the wrong I

23 committed.  I am sorry to my family and loved ones, and most

24 importantly, to Mr. Snipes and his family members.

25         When I committed this horrible crime, I was a

1  hardheaded 18-year-old boy and made many irrational decisions.

2  I didn't listen to my grandparents when they gave me a curfew to

3  come home earlier when they wanted me to go to school and do the

4  right thing.  I wanted to follow others and be accepted by

5  people that didn't have the best interests for me or my

6  well-being.  It took being arrested and getting sentenced to a

7  lot of time for me to finally realize the seriousness of my

8  actions.

9         Like I talk about in my letter, Your Honor, there's

10 not a day that goes by that I wish I could take back the pain

11 and hurt I caused committing this crime.  My grandparents taught

12 me that actions speak louder than words, and they showed me that

13 through their actions -- they showed me through their actions

14 what it takes to be law-abiding citizens even when they

15 struggled to take care of my siblings and myself.  No matter the

16 difficulty of raising us, they continued to do the right thing

17 by working and providing for us the right way rather than going

18 out and doing the wrong things in order to take care of us.

19         Now, as a 30-year-old man, I know that no matter what

20 the future holds, whether I fall on hard times or not, to always

21 have integrity and do the right thing.  The time I spent in

22 prison forced me to mature in ways I couldn't have imagined when

23 I was standing before you six years ago.  I've taken many self-

24 help programs that helped me identify my wrong ways of thinking

25 and how to correct those thoughts if they were to ever occur

again.

I would like to get out there to my family, but most of all to my seven-year-old son that's here in court to teach him the things that I've learned from these years, so that he won't make the same choices I have made in the past.

As you know, Your Honor, I came to prison while my child's mother was two months pregnant, and I've missed so much of -- I've missed so much of my son's life, and it pains me every day not being able to be there for him.  I know what it's like growing up without my father.  That's one of the reasons why I gravitated toward the streets and the gang life.  I was looking and searching for a missing love, and I don't want that -- I don't want my son to look for that same love that I thought I was missing.

I know the decisions you make on a daily basis are really hard ones to make.  I am asking you, Your Honor, to grant me a second chance to prove to you and this Court that I can be the man that my family raised me to be.  And I am asking you to judge me off the man that's before you today, not the man I was before you six years ago, the man that committed these crimes. I just thank you for this opportunity to speak before you again.

THE COURT:  Thank you, Mr. Johnson.

I have to start with the sentencing guidelines.  They are only advisory, but they are a starting point.  The base offense level based on the attempted murder Racketeering Act is

1  31.  The base offense level for the narcotics conspiracy

2  predicate is 22, plus two for the involvement of a firearm

3  brings it to 24.  Under the grouping analysis, the higher of the

4  two gets bumped up one level to 32.  Three levels are subtracted

5  for the defendant's timely acceptance of responsibility, and the

6  offense level is 29.

7          The defendant's criminal history category remains the

8  same.  It's Category IV.  That is based on a number of prior

9  convictions.  There are a couple of trespasses from when he was

10 17 that don't result in any criminal history points.  He gets

11 two points from a resisting arrest and a violation of probation

12 when he was 18.  He gets two points from driving a stolen car

13 and attempting to flee from the police.  He has two more points

14 for violating an order of protection by choking the victim and

15 then violating probation again.  He gets another point for

16 another contempt conviction for violating an order of

17 protection, and probation was revoked on that one as well.

18 That's seven criminal history points.  Two are added because he

19 was under a Criminal Justice sentence at the time of the

20 offense.  He is in Criminal History Category IV, and that puts

21 his sentence at 190 -- excuse me -- 121 to 151.

22          Whether I should sentence within, above or below that

23 range turns on the 3553(a) factors.

24          The first is the nature and circumstances of the

25 offense.  As both lawyers have discussed, that has not changed.

1  It is an incredibly serious offense.  I am sure these past six

2  years for Mr. Snipes in a wheelchair having somebody have to

3  take him to the bathroom and do everything for him, I'm sure

4  it's been a long six years.  I understand he was no angel.  And

5  I understand the shoe just as easily could have been on the

6  other foot, but the fact remains that Mr. Johnson tried to kill

7  this man and put him in a wheelchair for the rest of his life;

8  and thereafter he didn't say to himself, Oh, boy.  This is out

9  of hand.  I need to change my life.  He continued in the

10 leadership role in GMF.  After his brother killed someone, he

11 hid the murder weapon from law enforcement.  He continued as a

12 marijuana dealer.  He and his brother had a handgun in their

13 apartment, and he remained into 2014 when the police saw him and

14 others on their way to a rival gang's territory.  He was

15 obviously still an enthusiastic member of the gang.

16       So and, you know, these gangs and the violence that

17 they promoted made their area of Yonkers a very, very dangerous

18 place for law-abiding people.  It made mothers afraid to let

19 their kids play outside, and that's a real harm to the community

20 on top of the harm to the people who were actually shot.  So an

21 extremely serious offense.

22       The history and characteristics of the defendant are

23 the next factor, and they cut both ways, as they often do.

24 Mr. Johnson had deprivations in his upbringing that no kid

25 should have to suffer.  His father was not in his life.  His

 1  life was chaotic.  He was in foster care.  He was separated from
 2  his siblings.  When he was in foster care, he was assaulted.
 3  His mother was not a stable presence, put it that way.  When he
 4  was finally placed with his grandmother, the damage was done.
 5  She had a lot of kids she was trying to handle.  There was an
 6  uncle who tried to be a positive influence, but by then,
 7  Mr. Johnson had been lost to the streets.
 8           He clearly had some major issues with domestic
 9  violence.  He was not deterred by his prior stints in jail.
10           I am sorry, but if the baby can't stay quiet, you're
11  going to have to step out.
12           So he suffered as a kid.  He didn't get the kind of
13  stability and structure and love and consistent care that a
14  child needs, and it messed him up big time, and none of that is
15  his fault; but he racked up quite a criminal history for a young
16  man, and he, as discussed, did some terrible damage.
17           I have to consider the seriousness of the offense,
18  which I have already talked about.
19           I have to consider promoting respect for the law.
20  That was clearly an issue with Mr. Johnson then.  He is saying
21  all the right things now.  I still have to consider protecting
22  the public and specific deterrence.  I also have to consider
23  general deterrence and just punishment and a punishment that
24  fits the crime of putting another human being in a wheelchair
25  for the rest of his life, not to mentioned the other aspects.

1              I have to consider the guidelines, but I have to

2    say -- and I think I have said this before in a number of the

3    resentencings -- that generally when there is a mandatory

4    minimum, I decide what I think the sentence should be, and then

5    I subtract out the mandatory minimum, and that's what I give on

6    the remaining count.  In this case that happened to be the low

7    end of the guidelines, but that doesn't mean that I have this

8    belief that the guidelines are always right.  I would have given

9    more than what the guidelines say if there hadn't been the gun

10   count.

11             I have to consider unwarranted disparities, not just

12   among the co-defendants, but among all similarly situated

13   defendants.  I went back and looked at what I did with a number

14   of the other defendants and some -- Mr. King, I gave him the

15   same sentence.  I didn't go down at all.  Some of the defendants

16   on resentencing I went down a year, six months, ten months.  It

17   looks like the biggest break anybody got was Mr. Brown.  I went

18   down from 120 months to 102 months, so that's an 18-month break.

19             Everybody is different, but for somebody who had

20   Mr. Johnson's role and who did the damage he did, going down to

21   a sentence along the lines of the guidelines would not

22   sufficiently serve the purposes of sentencing.  That said,

23   Mr. Johnson -- who I think I noted even at the time showed some

24   improved insight and had earned his GED -- has shown even

25   greater insight and maturity, and I'm glad to see it.  He's

1 gotten in trouble in prison, but not for quite a while.  He's

2 settled down, and that's what we expect when someone turns into

3 their late 20s.  All of his tickets in jail are conduct 2016 and

4 earlier, and that's sort of right on schedule for when people

5 tend to settle down.  So that's a good sign.  I thought what

6 Mr. Johnson said today showed good insight.

7          And, you know, the big issue here is what happened to

8 Mr. Snipes, and what it must be like to be him and to be

9 dependent on other people.  He is alive, which is pure luck.

10 Good luck for him and Mr. Johnson.  I guess it's pure bad luck

11 that he was paralyzed because Mr. Johnson could have easily

12 missed, and then he wouldn't be looking at the sort of sentence

13 we are looking at, but we have to take the facts as we find them

14 and not do these what-ifs.

15          I am going to give Mr. Johnson a lower sentence than I

16 gave him last time, but it's going to be above the guidelines.

17 The conduct is just too serious, and the message that needs to

18 be sent to people on the street who might, like the young

19 Mr. Johnson, want to be accepted by gangs, they need to know

20 that they are going to be ruining a large part of their lives.

21          I am actually landing on a number lower than what I

22 came out having in mind, but the lowest I feel I can go is

23 176 months' imprisonment.  That's 18 months less than the

24 original sentence if my math is right.  And, otherwise, the

25 remainder of the sentence is going to be the same.  It's going

1  to be three years' supervised release on the following

2  conditions:  The defendant will not commit another federal,

3  state or local crime.  He will not unlawfully possess a

4  controlled substance.  He will refrain from any unlawful use of

5  a controlled substance.  He will submit to one drug test within

6  15 days of release from imprisonment and at least two more

7  thereafter.  He will cooperate in the collection of DNA as

8  directed by the probation officer.  He will follow the standard

9  conditions of supervision 1 through 12, along with the following

10 special conditions:  He will participate in an outpatient

11 substance abuse treatment program approved by the probation

12 office, which may include testing to determine whether he's

13 reverted to using drugs or alcohol.  He will also participate in

14 an anger management program as approved by the probation office,

15 and he will take any prescribed medications unless otherwise

16 instructed by the provider.

17         In both instances he will contribute to the cost of

18 services rendered based on ability to pay and availability of

19 third-party payments.  I authorize the release of available

20 evaluations and reports, including the presentence report, to

21 both providers.

22         The defendant will submit his person, residence, place

23 of business, vehicle, effects, computers, any property,

24 electronic communication or data storage devises, cloud storage

25 or media to search by a probation officer with the assistance of

1   law enforcement if needed, based on reasonable suspicion

2   concerning a violation of a condition of release or a violation

3   of law by the defendant.  The search must be conducted at a

4   reasonable time and in a reasonable manner.  Failure to submit

5   to search may be grounds for revocation.  The defendant shall

6   inform any other occupants that the premises may be subject to

7   search pursuant to this condition.  The defendant shall report

8   to the nearest probation office within 72 hours of release from

9   custody, and I recommend he be supervised by his district of

10  residence.

11          I am imposing the mandatory $100 special assessment.

12  If the defendant has already paid 200 for both counts, then $100

13  is to be refunded.  Otherwise, I am not imposing a fine based on

14  inability to pay.

15          Does either lawyer know of any legal reason why the

16  sentence I have described should not be imposed?

17          MR. ALLISON:  No, Your Honor.

18          MR. GALLUZZO:  No, Your Honor.

19          THE COURT:  All right.  Then the sentence I have

20  described is the sentence I impose.  It's the sentence I find

21  sufficient, but not greater than necessary, to serve the

22  purposes of sentencing, and I would add that I have taken into

23  account that it has been difficult being in prison during Covid.

24          Mr. Johnson, you have the right to appeal your

25  conviction and sentence except to the extent you have given up

1  that right through your guilty plea or your plea agreement.  If

2  you think you have grounds to appeal, and you are unable to pay

3  the costs of an appeal, you can apply for permission to appeal

4  without paying.  Any notice of appeal must be filed within

5  14 days of entry of the judgment of conviction, and Mr. Galluzzo

6  will assist you with that.

7           I guess I don't need to vacate the conviction on Count

8  Two because the Circuit has already done that for me, but if I

9  am wrong, I vacate and dismiss Count Two.

10          I do feel this is a case where an above-guidelines

11 sentence is necessary to account for the nature and

12 circumstances of the offense; not just Mr. Snipes, but all the

13 conduct related to the defendant's participation in GMF and his

14 history and characteristics, and to account for general

15 deterrence.

16          But, Mr. Johnson, I have given you a greater reduction

17 than I have given anyone else in the case.  Now, you have the

18 largest sentence of anybody that I have resentenced, but I am

19 impressed with how you have grown, and I don't mean to suggest

20 you are getting out any time soon.  There is still a long time

21 to go.  I recognize that.  But you are doing everything right.

22 And I am particularly glad to hear how committed you are to

23 taking what's really messed up your own life and making sure

24 that it's not going to mess up your son's.  And I hope you

25 continue to do that for the rest of the time that you have.  I

1   hope you continue to stay out of trouble and that you will serve

2   as little of that time as the law allows; and that once you get

3   out, you are going to let the probation officers who are going

4   to be supervising you help you.  This is not going to be easy.

5   The world changes really fast, and when you get home, which is

6   not as far off as it used to be, it's going to be a very

7   difficult adjustment, and I hope you will let, not just the

8   people who are out here supporting you, but your probation

9   officer help you with that adjustment.  They really want you to

10  succeed, and I think you really want you to succeed, and I

11  certainly really want you to succeed.  So, you know, keep up the

12  good work, and hopefully this is your last visit to a courtroom.

13          Is there anything else we should do this afternoon?

14          MR. ALLISON:  No, Your Honor.

15          MR. GALLUZZO:  No, Your Honor.  Thank you.

16          THE COURT:  All right.  Good luck, Mr. Johnson.

17          Thank you all.

18          (Time noted:  3:10 p.m.)

19

20

21

22

23

24

25